UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

McFADYEN, et al.

v.

DUKE UNIVERSITY, et al.
_____

CARRINGTON, et al.

v.

DUKE UNIVERSITY, et al.
_____

**MOTION TO COMPEL ROBERT DAVID JOHNSON'S COMPLIANCE
WITH SUBPOENAS AND INCORPORATED MEMORANDUM OF LAW**

Duke University ("Duke") and certain of its current and former administrators and employees (the "Duke Defendants") are defendants in two civil cases currently pending in the United States District Court for the Middle District of North Carolina: *Carrington, et al. v. Duke University, et al.*, Case No. 1:08-cv-119; and *McFadyen, et al. v. Duke University, et al.*, Case No. 1:07-cv-953.  Duke issued subpoenas in each action to Dr. Robert David Johnson, a professor at Brooklyn College who resides in Scarborough, Maine.  Dr. Johnson objected and indicated his unwillingness to appear for deposition or produce responsive documents.  Pursuant to Fed. R. Civ. P. 45(c)(2)(B)(i), Duke seeks to compel Dr. Johnson's compliance with the subpoenas.

**NATURE OF THE CASE**

*Carrington* and *McFadyen* arise out of an investigation of the Duke men's lacrosse team regarding false allegations of rape made by a stripper who performed at a party on 13 March 2006.

The court has dismissed the majority of claims against the Duke Defendants in both cases and stayed proceedings with respect to most remaining counts, pending an interlocutory appeal.

(Order at 2, Mar. 31, 2011 [*McFadyen* DE 187] (Ex. A); Order at 9, June 9, 2011 [*McFadyen* DE 218] (Ex. B); Order at 2, Mar. 31, 2011 [*Carrington* DE 165] (Ex. C); Order at 9, June 9, 2011 [*Carrington* DE 192] (Ex. D).)

The court allowed discovery to proceed on two counts in *McFadyen* and three counts in *Carrington*. The *McFadyen* claims against Duke on which discovery is proceeding are: (1) a breach of contract claim "limited to the allegation that Duke imposed disciplinary measures against Plaintiffs, specifically suspension, without providing them the process that was promised" (Count 21); and (2) a fraud claim "based on alleged fraudulent misrepresentations in letters to Plaintiffs regarding Plaintiffs' Duke Card information" (Count 24). (Ex. B, at 8.). The *Carrington* claims on which discovery is proceeding are: (1) a fraud claim "based on alleged fraudulent misrepresentations in letters to Plaintiffs" regarding Plaintiffs' Duke Card information (Count 8); (2) a constructive fraud claim "based on claims that Duke administrators created a relationship of trust and confidence and then abused that relationship for Duke's benefit" (Count 11); and (3) a negligent supervision claim for the conduct alleged in Counts 8 and 11 (Count 19). (Ex. D, at 8.)

## STATEMENT OF THE FACTS

Dr. Johnson co-authored the book, <u>Until Proven Innocent</u>, about the investigation of certain members of the Duke men's lacrosse team. *See* Stuart Taylor Jr. & KC Johnson, <u>Until Proven Innocent</u> (Oct. 2008). While writing the book, Dr. Johnson communicated with Plaintiffs, their parents, and their counsel about events relevant to this litigation. The book even describes advice that Plaintiffs received from their attorneys relating to events underlying claims against Duke. *See, e.g.*, *id.* at 52, 55, 60-61, 92. Duke seeks to discover these communications from Dr. Johnson both to obtain information regarding events underlying the claims and to evaluate attorney-client privilege assertions made by Plaintiffs.

On 9 July 2012, Duke issued subpoenas to Dr. Johnson for a deposition (the "Deposition Subpoenas") and for the production of documents (the "Document Subpoenas"). (*See* Exs. E & F.) On 7 August 2012, counsel for Dr. Johnson sent Duke a letter objecting to the subpoenas on numerous grounds. (*See* Ex. G.)

Duke replied, explaining the relevance of the information sought and noting that Dr. Johnson had publicly identified certain Plaintiffs, parents, and counsel as sources of information in his book. (*See* Ex. H.) Duke also offered to narrow document requests to alleviate any burden.

Counsel for Dr. Johnson responded, continuing his categorical objection. (*See* Ex. I.) Duke once again sought to explain the relevance and importance of the information in Dr. Johnson's possession. (*See* Ex. J.) Dr. Johnson has refused to comply with Duke's subpoenas.

## QUESTION PRESENTED

Whether Dr. Johnson should be compelled to comply with the subpoenas served by Duke.

## LEGAL STANDARD

"Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In light of the Middle District of North Carolina's prior orders (Exs. B & D), discovery is permitted on matters relevant to Counts 21 and 24 in *McFadyen* and Counts 8, 11, and 19 in *Carrington*.

The scope of discovery permitted by subpoena is the same as that under Rule 26. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998); *U.S. Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 18 (D. Me. 2010) ("A subpoena may seek information likely to lead to the discovery of information relevant to the matters at issue in the case.").

A court determining the propriety of a third-party subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential burden on the party subject to the

subpoena. *See Cusumano*, 162 F.3d at 714; *see also In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 51-53 (1st Cir. 2005) (describing factors to be considered).

## ARGUMENT

### I. DUKE SEEKS ONLY NON-CONFIDENTIAL INFORMATION THAT IS NOT SUBJECT TO ANY HEIGHTENED PROTECTION.

Dr. Johnson has simply asserted a blanket objection to Duke's subpoenas. One of Dr. Johnson's primary objections is that compliance would violate his First Amendment rights.[1] The First Circuit has recognized that "[a]cademicians engaged in prepublication research should be accorded protection commensurate to that which the law provides for journalists." *Cusumano*, 162 F.3d at 714. Courts apply such heightened protections, however, only when the sources or information in question are confidential. *Id.* at 714-16.

Duke is not asking Dr. Johnson to give up confidential sources. Dr. Johnson has already publicly identified certain Plaintiffs, their parents, and members of the Ekstrand & Ekstrand law firm as the sources of specific information published in his book. *See* KC Johnson, Until Proven Innocent: source notes (Aug. 15, 2007), http://academic.brooklyn.cuny.edu/history/johnson/notes.htm (citing the sources of facts in Until Proven Innocent) (Ex. K.) Duke seeks discovery only as to Dr. Johnson's non-confidential communications with these publicly-acknowledged sources. No privilege or constitutional protection applies to such information. *See Cusumano*, 162 F.3d at 714-16; *see also LaRouche v. Nat'l Broad. Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986) (discussing the journalist's privilege as relating to discovery of confidential sources); *Bruno & Stillman, Inc. v.*

---

[1] Dr. Johnson has not, however, served a log to identify communications withheld on the basis of such a privilege or other protection. As the person invoking privilege, Dr. Johnson "'bears the burden of establishing that it applies to the communications at issue and that it has not been waived.'" *Precision Airmotive Corp. v. Ryan Ins. Servs., Inc.*, No. 2:10–mc–244–JHR, 2011 WL 148818, at *5 (D. Me. Jan. 17, 2011) (quoting *In re Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003)). That burden includes providing a log within a "reasonable time." *Id.* Likewise, it is improper for Dr. Johnson to assert a complete objection on this basis to appearing at his deposition. "[Q]uashing a subpoena ad testificandum is very rare because until the witness is asked specific questions, usually there is nothing on which to base a motion to quash." *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d at 53 (reciting appellant's quote from 9 James Wm. Moore et al., Moore's Federal Practice § 45.04[3][a] (3d ed. 2005)).

*Globe Newspaper Corp.*, 633 F.2d 583, 595-96 (1st Cir. 1980) (same).

The cases cited by Dr. Johnson's counsel (*see* Ex. G) are inapplicable.  For example, in *Cusamano*, the court found the information at issue to be sufficiently confidential to merit protection where the subject book had not yet been published, the authors had entered into a non-disclosure agreement with the company that was the subject of the book in order to obtain the information, and the sources had been assured that they could confirm the quotes attributed to them before publication.  162 F.3d at 714.  None of these considerations is present here.

*In re Subpoena to Witzel*, 531 F.3d 113 (1st Cir. 2008), another case cited by Dr. Johnson's counsel, actually supports Duke's position.  In *Witzel*, a plaintiff served a document subpoena on a non-party university professor who had reviewed a draft textbook that was the subject of the litigation.  Unlike here, the professor objected only to producing his communications with non-parties who had no involvement with the underlying litigation and who were unknown to the defendants in that litigation.  The court sustained that objection.  *Id.* at 119.  By contrast, Duke seeks only Dr. Johnson's communications with the parties, the plaintiffs' parents, and their counsel – communications of a type that the subpoena recipient in *Witzel* had voluntarily produced.

## II.   DISCLOSURE WOULD BE PROPER EVEN IF THE REQUESTED INFORMATION WERE SUBJECT TO HEIGHTENED PROTECTION.

Even if Dr. Johnson's sources were confidential, his compliance would still be warranted.  In such situations, a court applies a balancing test.

> This test contemplates consideration of a myriad of factors, often uniquely drawn out of the factual circumstances of the particular case.  Each party comes to this test holding a burden.  Initially, the movant must make a prima facie showing that his claim of need and relevance is not frivolous.  Upon such a showing, the burden shifts to the objector to demonstrate the basis for withholding the information.  The court then must place those factors that relate to the movant's need for the information on one pan of the scales and those that reflect the objector's interest in confidentiality and the potential injury to the free flow of information that disclosure portends on the opposite pan.

*Cusumano*, 531 F.3d at 116 (citations omitted). Here, Duke's need for the requested information outweighs any alleged confidentiality or burden concerns of Dr. Johnson.

### A. Duke Has a Compelling Need for the Requested Information.

The information sought is relevant to pending claims in the litigation, cannot be obtained from the parties themselves, and is necessary to test the limits of privilege claims by Plaintiffs.

#### 1. Dr. Johnson Had Contemporaneous Communications with Plaintiffs on Highly Relevant Topics.

Plaintiffs, their parents, and members of the Ekstrand & Ekstrand firm, which represented many of the Plaintiffs during the criminal investigation, participated in the editorial process for the book. Ekstrand & Ekstrand even touted this work in a letter sent to parents. (*See, e.g.*, Letter from Samantha Ekstrand to John and Sandy Coveleski at JC0000417, June 29, 2007 (Ex. L).)

Not surprisingly, written communications created in this process have been probative on issues relevant to the pending claims. Duke would expect to find information similar to the following examples from correspondence involving other authors of books about the false rape allegations (including Dr. Johnson's co-author, Stuart Taylor):

- Discussion of advice allegedly given to the Plaintiffs by Defendant Sue Wasiolek – sent for verification, but later edited out of the publication. (*See* E-mail from Stuart Taylor to Lawrence Lamade at LL000088, Oct. 11, 2006 (Ex. M));

- Discussion about when one parent "knew . . . [Duke President Richard] Brodhead was not on our side." (*See* E-mail from Stuart Taylor to Lawrence Lamade at LL0000093, Oct. 20, 2006 (Ex. N)); and

- Discussion of whether Plaintiffs knew Defendant Wasiolek was an attorney and trusted her advice for that reason. (*See* E-mail from Daniel Flannery to Everett Flannery at DF00000145, Mar. 16, 2007 (Ex. O) (transmitting draft chapter of Don Yaeger's and Mike Pressler's book, <u>It's Not About the Truth</u>).

Each of these subjects is central to the *Carrington* Plaintiffs' constructive fraud claims.

Dr. Johnson's testimony and documents are likely to reveal equally relevant information

6

regarding the *McFadyen* claims.  Dr. Johnson publicly cited Plaintiff Ryan McFadyen seven times as a source of information for passages of Until Proven Innocent, often for passages addressing Duke's interactions with lacrosse players in the wake of the rape allegations – information that relates to claims in *McFayden*.  *See, e.g.*, Johnson, Until Proven Innocent: source notes, *supra*.

### 2. Duke Is Unable to Obtain the Materials Sought from Parties.

The fact that Dr. Johnson is a non-party to the litigation is "entitled to special weight in evaluating the balance of competing needs."  *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d at 53.  However, Duke has already sought the same evidence from Plaintiffs and has been unable to obtain it.  Thus, Dr. Johnson is the only potential source of specific, relevant materials.

Duke has served on each Plaintiff discovery requests seeking all communications and/or documents "concerning Ms. Mangum's Allegations."  (*See, e.g.*, Duke's 1st Reqs. for Produc. of Docs. ("RFPs") to Edward Carrington, Req. 9, Sept. 21, 2011 (Ex. P); Duke's 1st RFPs to Ryan McFadyen, Req. 7, Sept. 21, 2011 (Ex. Q).)  Duke has also requested from Plaintiffs all communications with Dr. Johnson involving the claims on which discovery is proceeding.  (*See, e.g.*, Duke's 3d RFPs to Edward Carrington, Reqs. 35-36, Aug. 17, 2012 (Ex. R); Duke's 2d RFPs to Ryan McFadyen, Reqs. 33-34, Aug. 17, 2012 (Ex. S).)[2]  Finally, Duke served a subpoena duces tecum on Robert Ekstrand – counsel for many of the Plaintiffs during the criminal investigation and current lead counsel for the *McFadyen* Plaintiffs – seeking his communications with Dr. Johnson.  While Mr. Ekstrand responded to these subpoenas with certain documents, the universe within his possession, custody, and control is different from that of Dr. Johnson.

Numerous Plaintiffs have testified that they communicated with Dr. Johnson about Ms. Mangum's allegations and Duke's response, both in conversations and via written correspondence.

---

[2] The deadline for responding to the latter requests is September 21, 2012.  Duke will advise the Court if it receives documents responsive to these requests that obviate the need for discovery of certain documents from Dr. Johnson.

*See, e.g.*, Catalino Dep. Tr. 159:7 – 161:22 (Ex. T) (Mr. Catalino "can't remember" what he told Dr. Johnson); McDevitt Dep. Tr. 314: 15 – 315:16 (Ex. U) (similar); Carrington Dep. Tr. 246:4 – 248:24 (Ex. V) (similar); Jennison Dep. Tr. 236:18 – 24 (Ex. W) (Mr. Jennison had e-mail communications with Dr. Johnson (emails not produced)).  Despite having certified the completeness of discovery,[3] however, these Plaintiffs have produced little to no correspondence with Dr. Johnson and have recalled few details about the substance of these communications.

### 3. Plaintiffs Are Asserting Privilege over Relevant Facts that Were Communicated to and Reported by Dr. Johnson.

Communications with or in the presence of a third party do not carry the confidentiality necessary to acquire the protection of the attorney-client privilege.  *See In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23 (1st Cir. 2003). Likewise, disclosure of previously privileged information to a third party, including a journalist, causes waiver of the privilege.  *Id.*; *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege.").

Plaintiffs have at times refused to answer deposition questions about facts reported by Dr. Johnson.  (*See* Ex. H, at 2-10.)  Duke needs to establish what was communicated to Dr. Johnson to assess these privilege claims.  The following examples illustrate the need for this information.

#### a. Events Surrounding Plaintiffs' Compliance with a Non-Testimonial Order

On 23 March 2006, Plaintiffs in *Carrington* and *McFadyen* appeared at a testing facility in Durham to give DNA samples in response to a court order.  The Plaintiffs' actions in complying with the Order, their reasons for complying, and the facts known to them at the time are proper

---

[3] The *Carrington* Plaintiffs certified that their responses to all ripe discovery requests are complete.  (*See Carrington* DE 256.)  The *McFadyen* Plaintiffs have not filed the same certification, but the deadline for doing so has lapsed.

subjects of discovery on the *Carrington* Plaintiffs' constructive fraud claim.

In his book, Dr. Johnson describes the events of March 23 and the advice that the Plaintiffs received from their lawyers at the time. *See* Taylor & Johnson, *supra*, at 60-61. Nevertheless, in depositions of several Plaintiffs, counsel instructed the deponents, on privilege grounds, not to respond to questions eliciting the exact information that was published in Dr. Johnson's book. (*See* Krom Dep. Tr. 208:4 – 213:19 (Ex. X); Clute Dep. Tr. 209:13 – 210:8 (Ex. Y); Oppedisano Dep. Tr. 230:13 – 231:22 (Ex. Z); Coleman Dep. Tr. 246:23 – 247:12 (Ex. AA).)

### b. Use of "DukeCard" Data to Establish a "Digital Alibi"

One of the pending claims in both *Carrington* and *McFadyen* relates to the Durham District Attorney's subpoena for, and Duke's disclosure of, data regarding Plaintiffs' use of a student identification swipe card (a "DukeCard"). Plaintiffs' own use and disclosure of the same data to the Durham authorities is relevant to the claim. Accordingly, Duke has sought to discover which Plaintiffs themselves collected DukeCard data and provided it to Durham authorities.

Dr. Johnson explained in <u>Until Proven Innocent</u> that many Plaintiffs, with help from members of the Ekstrand firm, compiled information – including DukeCard data – to build "digital alibis," establishing their whereabouts on the night in question. Taylor & Johnson, *supra*, at 61. Despite this discussion, however, Duke has been prevented from examining Plaintiffs on even the most basic facts surrounding these events. (*See, e.g.*, Schoeffel Dep. Tr. 182:11-183:7 (Ex. BB).)

### c. Plaintiffs' Cancelled Meeting with Durham Police

On 20 March 2006, the head lacrosse coach set up a meeting with the Durham Police, at which team members would be interviewed. That meeting was scheduled for March 22, but was cancelled before it took place. The reasons for the cancellation, the advice on which Plaintiffs relied in making decisions about that meeting, and whether Plaintiffs were receiving advice from

attorneys or parents are all relevant to the constructive fraud claim in *Carrington*.

In Until Proven Innocent, Dr. Johnson wrote about the cancellation, noting Mr. Ekstrand's reasons for cancelling the meeting and related advice. Taylor & Johnson, *supra*, at 52, 55. Despite these published descriptions, Plaintiffs have been instructed not to testify about Mr. Ekstrand's advice in connection with the meeting, the involvement of individuals' parents in the decisions surrounding the meeting, and the reasons behind the cancellation of the meeting. (*See, e.g.*, Clute Dep. Tr. 123:25-124:24 (Ex. Y); Oppedisano Dep. Tr. 228:13 – 229:4 (Ex. Z).)

### B. Duke Is Willing to Make Reasonable Accommodations to Alleviate any Unnecessary Burden on Dr. Johnson.

Duke has attempted to reach a compromise with Dr. Johnson. (*See* Exs. H & J.) Duke remains willing to work with Dr. Johnson to limit the document requests in any reasonable way that will make his compliance easier.[4] Duke is also willing to ameliorate any undue burden by compensating Dr. Johnson for the cost of travel and producing responsive documents. *See, e.g.*, *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006).

### CONCLUSION

For the foregoing reasons, Duke requests that this Court order Dr. Johnson to comply with the Document Subpoenas and the Deposition Subpoenas.

---

[4] For example, Duke would be willing to narrow its document requests to include only written communications between Dr. Johnson, on the one hand, and the players, their parents, or their lawyers, on the other hand, that refer to or discuss the following topics: (a) events occurring between 13 March 2006 and 28 March 2006; (b) the subpoena for DukeCard information by Durham police; (c) Duke's prior release of DukeCard information to Durham police; and (d) any disciplinary action taken against a *McFadyen* Plaintiff. Duke would waive its requests for additional documents described in its subpoena, including Dr. Johnson's notes and his communications with his co-author, Stuart Taylor.

This the 17th day of September, 2012.

        NORMAN, HANSON & DETROY, LLC

        /s/ Peter J. DeTroy

        /s/  Russell B. Pierce, Jr.

        /s/ David A. Goldman
Peter J. DeTroy/Russell B. Pierce, Jr./David A. Goldman
Norman, Hanson & DeTroy, LLC
415 Congress Street, P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000
pdetroy@nhdlaw.com
rpierce@nhdlaw.com
dgoldman@nhdlaw.com

*Counsel for Duke University*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 17th day of September 2012, I filed the foregoing **MOTION TO COMPEL ROBERT DAVID JOHNSON'S COMPLIANCE WITH SUBPOENAS AND INCORPORATED MEMORANDUM OF LAW** upon the Clerk of Court using the newcases.portland@med.uscourts.gov electronic mail address of the United States District Court for the District of Maine, Portland court location, and by copying counsel of record in the above-captioned action, including counsel for the witness, Patrick Strawbridge of Bingham McCutchen LLP, One Federal Street, Boston, MA 02110.

      /s/ David A. Goldman
      David A. Goldman
      NORMAN, HANSON & DETROY, LLC
      415 Congress Street
      P. O. Box 4600
      Portland, ME  04112-4600
      (207) 774-7000
      dgoldman@nhdlaw.com

      *Counsel for Duke University*