UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RYAN McFADYEN and EDWARD CARRINGTON, ) ) ) | |
| Plaintiffs ) ) | |
| v. ) ) | No. 2:12-mc-196-JHR |
| DUKE UNIVERSITY, ) ) | |
| Defendant ) | |

*MEMORANDUM DECISION ON MOTIONS TO COMPEL AND TO QUASH SUBPOENA*

Two motions, one to compel and one to quash, have been filed regarding subpoenas for deposition and to produce documents served in two related foreign actions. The subpoenas, dated July 9, 2012, were served by Duke University on Dr. Robert David Johnson, a Maine resident and a non-party to two actions pending in the United States District Court for the Middle District of North Carolina that gave rise to the discovery sought. Duke seeks an order compelling Dr. Johnson to produce certain documents and appear for deposition, and Dr. Johnson seeks an order quashing the subpoenas. For the reasons that follow, I grant the motion to compel in part and deny the motion to quash.[1]

**I. Background**

In the underlying actions, former members of the Duke lacrosse team have sued Duke University and others for their actions or inaction in the spring of 2006 when, in a case of national notoriety, several Duke lacrosse players had been accused of crimes by a dancer who

---

[1] At oral argument, counsel for both parties took the position that the motions should be decided by this court, rather than the court in which the underlying actions are pending. *See In re Cutting*, Misc. No. 09-75-P-JHR, 2009 WL 1291477, at *1 (D. Me. May 7, 2009).

1

had been hired to perform at a party. The criminal charges resulting from these accusations were ultimately dismissed. Dr. Johnson and a co-author wrote a book about these events, entitled *Until Proven Innocent*, and Dr. Johnson wrote a blog about them, called "Durham-in-Wonderland," which he continues to write.

On June 9, 2011, the presiding judge in the North Carolina cases issued an order granting in part a motion to stay. In the underlying "McFadyen" case, Counts 21 and 24 were not stayed. Count 21 alleges a breach of contract arising out of the imposition of disciplinary measures against the student plaintiffs. Count 24 alleges fraudulent misrepresentation in letters regarding "DukeCard" information[2]. In the underlying "Carrington" case, Counts 8 (for fraud), 11 (for constructive fraud), and 19 (for negligent misrepresentation) were not stayed. The court allowed discovery to proceed only with respect to these counts. *See* Order dated June 9, 2011, *McFadyen, et al., v. Duke University, et al.*, No. 1:07cv953 (Middle District of North Carolina) (ECF No. 1-2), Order dated June 9, 2011, *Carrington, et al. v. Duke University, et al.*, Docket No. 1:08CV119 (Middle District of North Carolina) (ECF No. 1-4).

The deposition subpoenas served on Dr. Johnson by Duke set a deposition date of August 6, 2012, and the document subpoenas set a date for production of 10 or 11 categories of documents of July 30, 2012. The document subpoenas include one page entitled "Introduction," three pages of definitions, and a page of instructions. The following categories of documents were requested:

    1.  all notes from interviews with named individuals "during which any Information Concerning Pending Claims was discussed."

    2. all "discovery files" as that term was used in Dr. Johnson's September 1, 2008, blog titled "Paperback Source Notes" that contain any "Information Concerning Pending Claims;"

---

[2] The DukeCard is the University's electronic student identification card.

2

     3. all correspondence with Robert C. Ekstrand, Stefanie Sparks Smith, or any other attorney or employee of Ekstrand & Ekstrand LLP[3] "that contain any Information Concerning Pending Claims;"

     4. in the "Carrington" case subpoena only, all correspondence with Charles J. Cooper, Peter A. Patterson, David H. Thompson, Nichole J. Moss, or any other attorney or employee of Cooper & Kirk, PCCL, that contain any Information Concerning Pending Claims;

     5. all correspondence with any Duke lacrosse player that contains any Information Concerning Pending Claims;

     6. all correspondence with any Duke employee that contains any Information Concerning Pending Claims;

     7. all correspondence with any Duke alumnus that contains any Information Concerning Pending Claims;

     8. all documents "that concern, discuss, or reflect any payments made to a Duke Lacrosse Player for that person's time or information relating to the Lacrosse Incident;"

     9. all documents "that concern, discuss, or reflect any payments made to Robert C. Ekstrand, Stefanie Sparks Smith, or any other attorney or employee of Ekstrand & Ekstrand for that person's time or information relating to the Lacrosse Incident";

     10. all policies or contractual agreements "that concern, discuss, or reflect the management of" Dr. Johnson's Duke-related website; and

     11. all policies or contractual agreements that concern, discuss, or reflect the removal of comments posed on" Dr. Johnson's Duke-related website.

Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (ECF No. 1-6), "Carrington" Exh. A at 6-8 and "McFadyen" Exh. A at 6-7..

     The subpoenas define "Information Concerning Pending Claims" to include the following subjects:

     (a) the disclosure of DukeCard Data to the Durham Police department, the subsequent subpoena that was issued to Matthew Drummond on May 31, 2006, seeking production of DukeCard Data by Duke, or the responses to that subpoena;

---

[3] Ekstrand and Smith represented many of the Duke lacrosse players during the period when charges against them were pending and/or being investigated.

3

     (b) in the "Carrington" case subpoena only, communications between Tallman Trask and the co-captains of the 2005-2006 Duke men's lacrosse team on March 24, 2006, or any subsequent discussions regarding those Communications;

     (c) in the "Carrington" case subpoena only, communications between Richard Brodhead and the co-captains of the 2005-2006 Duke men's lacrosse team on March 28, 2006, or any subsequent discussions regarding those communications;

     (d) in the "Carrington" case subpoena only, communications between Suzanne Wasiolek and one or more of the co-captains on March 15, 2006, and thereafter or any subsequent discussions regarding those Communications; or the job performance of Richard Brodhead, Robert Dean, Matthew Drummond, Aaron Graves, Kate Hendricks, Tallman Trask, and Suzanne Wasiolek;

     (e) in the "McFadyen" case subpoena only, information regarding the disciplinary proceedings concerning Breck Archer, the disciplinary proceedings concerning Matthew Wilson, or the interim suspension of Ryan McFadyen.

*Id.*, "Carrington" Exh. A at 4, ¶ 11 and "McFadyen" Exh. A at 4, ¶ 11.

## II. Discussion

### A. The Subpoena for Documents

Following discussion and negotiation by the lawyers involved, Duke has agreed to limit its demand for documents to non-privileged communications with "publicly-acknowledged sources," Motion to Compel Robert David Johnson's Compliance with Subpoenas ("Motion to Compel") (ECF No. 1) at 4, and to further limit its inquiry to the topic areas of (a) events occurring between March 13, 2006, and March 28, 2006, (b) the subpoena for DukeCard information served by the Durham, North Carolina police, (c) Duke's prior release of DukeCard information to the Durham police, and (d) any disciplinary action taken against a plaintiff in the *McFadyen* case. *Id*. at 10 n.4.[4] My discussion addresses only this narrowed scope of requests.

---

[4] The footnote also says that Duke will limit its requests to written communications between Dr. Johnson and, *inter alia,* the players' parents. There was no request for communications between Dr. Johnson and the parents in the initial subpoena. I will not order Dr. Johnson to produce any documents not reasonably within the scope of the initial subpoena.

4

At oral argument, counsel appeared to agree that this dispute is controlled by the First Circuit's decision in *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998), although they disagree sharply about how its teachings should be applied here. In that case, the defendant sought the notes, recordings, and transcripts of a third-party author and college professor, as well as his correspondence, with 40 employees of its primary competitor, for possible use in its defense in an antitrust action. *Id*. at 711. The court from which the subpoena had issued declined to compel the production of this material.

On appeal, the First Circuit held that such individuals "are within a group whose pre-publication research merits a modicum of protection." *Id*. at 715. It then set out the applicable test as follows:

> [W]hen a subpoena seeks divulgence of confidential information compiled by a journalist or academic researcher in anticipation of publication, courts must apply a balancing test. This test contemplates consideration of a myriad of factors, often uniquely drawn out of the factual circumstances of the particular case. Each party comes to this test holding a burden. Initially, the movant must make a prima facie showing that his claim of need and relevance is not frivolous. Upon such a showing, the burden shifts to the objector to demonstrate the basis for withholding the information. The court then must place those factors that relate to the movant's need for the information on one pan of the scales and those that reflect the objector's interest in confidentiality and the potential injury to the free flow of information that disclosure portends on the opposite pan.

*Id*. at 716 (citations omitted).

Here, Duke has shown that it is likely that there exist more communications between Dr. Johnson and the plaintiffs than the 70 emails that Duke has been able to locate to date, and that the plaintiffs have not been able to produce them when asked to do so. *See, e.g.,* [Partial Transcript of] Videotaped Deposition of Anthony McDevitt (ECF No. 2-5) at 314; [Partial Transcript of] Videotaped Deposition of Edward C. Carrington, VII (ECF No. 2-6) at 246-47;

5

[Partial Transcript of] Videotaped Deposition of John Jennison (ECF No. 2-7) at 236; and Letter dated September 10, 2012, from Jason F. Trumpbour to Tom Segars, Esq. (ECF No. 13-4).[5] The relevance of such communications is fairly obvious: Dr. Johnson wrote about the very incidents that are at issue in the underlying actions. Duke's need for such information is also apparent: Duke is defending itself against the claims of the same individuals who communicated with Dr. Johnson about the events at issue. Unlike the moving party in *Cusumano*, 162 F.3d at 716-17, Duke has taken the time and made the effort to try to obtain from other sources the information that it seeks from Dr. Johnson. Thus, Duke has made the necessary *prima facie* showing under *Cusumano*.[6]

Dr. Johnson has aimed most of his fire at these initial requirements. However, with respect to his burden to demonstrate a basis for withholding the information, he has adequately shown that he and the plaintiffs in the underlying actions had an expectation of privacy, *see* Affidavit of Robert David Johnson ("Johnson Aff.") (ECF No. 5-1) ¶¶ 8-10, 12-16. Yet, that is not enough,[7] particularly where, as here, the plaintiffs are themselves the parties who stand to benefit from Dr. Johnson's invocation of the shield of privacy while pursuing claims against Duke based upon the very events about which they spoke with Dr. Johnson. Contrary to Dr. Johnson's argument, I do not see how compelling him, under these circumstances, to reveal what the plaintiffs told him will chill his efforts to obtain information about the Duke lacrosse scandal

---

[5] Duke asserts that "[t]he *Carrington* Plaintiffs certified that their responses to all ripe discovery requests are complete." Motion at 8 n.3. They have not provided the court with the document cited in support of this assertion, "*Carrington* DE 256," *id*., but there does not appear to be a dispute on this point, or on its additional assertion that the deadline for the *McFadyen* plaintiffs to do so "has lapsed."

[6] Duke's proffered interest in possible impeachment of the plaintiff lacrosse players' testimony, standing alone, is not enough to justify production. *See In re Bextra & Celebrex Marketing Sales Practices & Product Liability Litig.*, 249 F.R.D. 8, 12 (D. Mass. 2008). In addition, its professed concern for "testing" the plaintiffs' claims of attorney-client privilege should be addressed to the trial judge.

[7] I note that much of Dr. Johnson's concern is directed at Duke employees or those who "had business or other professional dealings with Duke or the city of Durham that they wanted to avoid jeopardizing." Johnson Aff. ¶¶ 12-13. Duke's request has now been limited to communications with the plaintiffs and their attorneys, so these concerns are no longer relevant.

from any other individuals.  People who bring suit must expect that their prior statements that are relevant to their claims cannot be hidden from those whom they are suing.

In my view, the *Cusumano* balance tips in favor of Duke under the circumstances of this case.  As narrowed, Duke's request for communications between the plaintiffs and/or their lawyers and Dr. Johnson, concerning a distinct period of time, and limited to three discrete issues, does not harm the plaintiffs' expectations of privacy, rendered ineffectual by their decisions to bring the underlying lawsuits, and does not affect the free flow of information sufficiently to require that the modified subpoena be quashed.

When information is sought by subpoena from a non-party, like Dr. Johnson here, the court must also be concerned for the burden "thrust upon" those third parties.  *Cusumano*, 162 F.3d at 717.  In this case, however, Dr. Johnson has made no attempt to show that compliance with the modified request will be unduly burdensome.  Indeed, he says that he no longer has his handwritten notes from his interviews of any Duke students or former students.  Johnson Aff. ¶¶ 26, 28.  Notably, he has not contended that he no longer has access to emails that would be responsive to the subpoenas.

Given the modified and narrowed scope of the document subpoenas, I see no need for the privilege log requested by Duke.  Memorandum of Law in Response to Robert David Johnson's Motion to Quash Subpoenas (ECF No. 11-1) at 4-5.

### B.  The Deposition Subpoenas

Dr. Johnson devotes little argument to his motion to quash the subpoenas for his deposition.  He contends that the deposition subpoenas should be quashed "[f]or the same reasons of privilege and respect for the First Amendment."  Robert David Johnson's Consolidated Opposition to Duke University's Motion to Compel Compliance with Subpoenas

and Cross-Motion to Quash Subpoenas Pursuant to Rule 45(C)(3) ("Opposition") (ECF No. 5) at 10. I have addressed Dr. Johnson's First Amendment concerns in the context of the subpoenas for documents and have concluded that those concerns do not require the quashing of the documentary subpoenas, as now limited in scope.

The only other argument raised in support of his motion to quash the deposition subpoenas by Dr. Johnson is an assertion that "the prior deposition taken from Dr. Johnson [presumably by Duke] is replete with examples of improper questioning of a reporter's editorial judgments and thought processes." *Id.* Such questions would not be appropriate in any deposition of Dr. Johnson taken at this time, because they are well beyond the limited scope of discovery allowed by the trial court in North Carolina, as further voluntarily limited by Duke herein. Should such questions be posed, and should the questioner insist upon answers, or seek to prolong the deposition by asking other inappropriate questions, Dr. Johnson and his attorney have available the same remedy available to all deponents in federal lawsuits: contacting the court to request a remedial order, even as promptly as during a recess of the deposition.

Dr. Johnson has not made the necessary case for quashing the subpoenas for his deposition. *See, e.g., M.Y. v. Danly, Inc.*, Civil Nos. 09-108-P-H, 10-308-P-H, 2010 WL 4569852, at *1 (D. Me. Nov. 3, 2010).

### III. Conclusion

For the foregoing reasons, Duke University's motion to compel compliance with its subpoenas directed to Dr. Robert David Johnson is **GRANTED IN PART:** Dr. Johnson shall provide all communications between him and the named plaintiffs in the underlying actions or between him and the attorneys who represented those plaintiffs at the relevant time, limited to the time period and issues set forth in footnote 4 on page 10 of Duke's motion to compel (ECF

No. 1), and Dr. Johnson shall appear for deposition at a mutually agreeable time and place. The motion to compel is otherwise **DENIED**. Dr. Johnson's motion to quash the subpoenas is **DENIED**.

Dated this 12th day of October, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge